UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SUZANNE CONSTANTINO,

    Plaintiff,

v.

NANCY A BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. 2:17-CV-00829-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff Suzanne Constantino filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 6.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to provide specific and legitimate reasons, supported by substantial evidence, to discount two medical opinions. Had the ALJ properly considered this medical evidence, the residual functional capacity ("RFC") may have included additional limitations. The

ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 5, 2013, and an application for SSI on January 9, 2014. *See* Dkt. 9, Administrative Record ("AR") 11. In both applications, Plaintiff alleged disability beginning July 25, 2013. AR 11. Plaintiff's applications were denied upon initial administrative review and on reconsideration. *See* AR 11. ALJ Ilene Sloan held a hearing on May 11, 2015. AR 37-65. In a decision dated October 28, 2015, the ALJ determined Plaintiff to be not disabled. AR 11-29. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-3; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by giving little weight to the medical opinions of: (1) treating physician Dr. Edward Hartzler, M.D.; (2) examining physician Dr. Shawn K. Kenderline, Ph.D.; and (3) examining physician Dr. Richard W. Washburn, Ph.D. Dkt. 11, p. 1, 3-14. Plaintiff also asserts that, as a result of these errors, the ALJ erred at Steps Three and Five of the sequential evaluation process. *Id.* at 1, 14.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

**I.     Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff first argues the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to give little weight to medical opinion evidence from three physicians. Dkt. 11, pp. 1, 3-14.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

   A.  Dr. Hartzler

Plaintiff maintains the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for giving little weight to Dr. Hartzler's medical opinions. Dkt. 11, pp. 3-8.

Dr. Hartzler is Plaintiff's treating physician. *See e.g.* AR 328-49, 350-59, 382-99 (treatment notes). Dr. Hartzler completed both a physical functional evaluation form and a medical source statement. AR 306-08, 555-59. In the physical functional evaluation, Dr. Hartzler opined Plaintiff's lumbar strain moderately interfered with her ability to perform one or more

1 basic work-related activities. AR 307. He also opined Plaintiff had severe cervical strain and left
2 shoulder strain, both of which made her unable to perform one or more basic work-related
3 activities. AR 307. In all, Dr. Hartzler opined Plaintiff would be severely limited in her ability to
4 perform work in a regular, predictable manner, and she would be unable to meet the demands of
5 sedentary work. AR 308.

In his medical source statement, Dr. Hartlzer made several additional findings regarding Plaintiff's limitations. He opined Plaintiff had severe limitations in her ability to deal with work stress. AR 555. With respect to Plaintiff's need to rest during a work day, he stated Plaintiff could not work for more than ten-to-fifteen minutes during an eight hour work day due to pain and fatigue. AR 556. He further opined that Plaintiff needed to rest, lay down, or recline in a supine position for more than six hours of an eight hour work day. AR 556. In addition, Dr. Hartzler found Plaintiff could use her fingers to handle for fifteen minutes before stopping use, and she could handle for less than one hour total during an eight hour work day. AR 556-57. Moreover, Dr. Hartlzer opined Plaintiff could sit for a maximum of fifteen minutes before needing to alternate postures or walk, and could sit for less than one hour total during an eight hour work day. AR 557-58. Lastly, Dr. Hartzler opined Plaintiff could stand or walk for fifteen minutes before needing to sit or lay down, and could walk for less than one hour total of an eight hour work day. AR 558.

The ALJ summarized Dr. Hartzler's treatment notes and opinions and gave them "little weight," stating:

> [S]uch extreme limitations are not supported by the medical evidence. (1) Dr. Hartzler's own treatment notes reflect normal sensation and reflexes, normal motor strength, minimal tenderness, some limited range of motion in the neck and shoulders; and a normal CT and neurological examination (Exhibits 12F and 21F). There is no objective support for the claimant's need to be supine for 6 out

of 8 hours in a day. (2) Dr. Hartzler's limitations are also not consistent with the
remainder of the opinion evidence in the record, which renders it less persuasive.

AR 24 (numbering added).

The ALJ first gave little weight to Dr. Hartzler's opinions because she found Dr. Hartzler's "extreme limitations" unsupported by the medical opinion evidence, including Dr. Hartzler's own treatment notes. AR 24. An ALJ need not accept an opinion which is inadequately supported "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Hartzler's treatment notes stated Plaintiff had neck spasms, shoulder and neck pain and tenderness, and muscle tightness. *See e.g.* AR 328 (muscle spasms in neck, dorsal spine, and lumbar spine, but Plaintiff generally "doing better"), 331 (pain in neck and shoulder), 527 (limited range of motion in neck and left shoulder), 530 (neck pain and left shoulder muscle spasm). Nevertheless, as the ALJ accurately summarized, Dr. Hartlzer's notes contain several notes of "normal results" and improvement, as well. *See e.g.* AR 328 (Plaintiff "moving better" and seeming "much more comfortable"), 329 (Plaintiff reporting neck pain but exam revealed normal gait, composition of movement, and motor strength), 530 (upper extremity reflexes were "normal" and had "good sensation" as well as "good range of motion of her dorsal spine and lumbar spine"), 534 (examination revealed normal neck alignment).

Furthermore, Plaintiff maintains the ALJ's assertion that there is no objective support for Plaintiff's need to be supine for six hours in an eight-hour work day "is not factually accurate." Dkt. 11, p. 5. Yet Plaintiff did not point to – and the Court has not found – any particular medical evidence in the record supporting this finding by Dr. Hartzler.

Thus, in light of Dr. Hartzler's treatment notes – which contain both notes of pain but also notes of normal results and improvement – the ALJ reasonably determined Dr. Hartzler's opined limitations were unsupported by his own treatment records. AR 24. The ALJ's first

reason for discrediting Dr. Hartzler was therefore not error. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted) ("if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"); *see also Andrews*, 53 F.3d at 1039 (citation omitted) (the ALJ is responsible for "resolving conflicts in medical testimony").

Second, the ALJ gave little weight to Dr. Hartzler's opined limitations because she found they were inconsistent "with the remainder of the opinion evidence in the record." AR 24. An ALJ cannot use a conclusory statement to reject a doctor's findings; rather, the ALJ must state her interpretations and explain why they, rather than the doctors' interpretations, are correct. *See Embrey*, 849 F.2d at 421-22. The ALJ's statement here was conclusory because the ALJ failed to explain which parts of Dr. Hartzler's opinion were inconsistent, and how they were inconsistent, with the record. *See* AR 24. Hence, the ALJ's second reason for giving little weight to Dr. Hartlzer's opinions was not a specific and legitimate reason, supported by substantial evidence, for doing so. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In the present case, the ALJ provided one specific and legitimate reason, supported by substantial evidence, for giving little weight to Dr. Hartzler's opinion. But, the ALJ also provided a second reason for giving little weight to Dr. Hartzler's opinion, which was not specific and legitimate nor supported by substantial evidence. Thus, because the ALJ provided one specific and legitimate reason to give little weight to Dr. Hartlzer's opinion, any other error regarding Dr. Hartzler was harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("the relevant inquiry in this context is . . . whether the ALJ's decision remains legally valid, despite such error"); *Batson*, 359 F.3d at 1197 (finding ALJ's error harmless because the ALJ provided other legally valid reasons for discrediting Plaintiff's testimony). Accordingly, the ALJ need not re-evaluate Dr. Hartzler's opinion on remand.

B. <u>Dr. Kenderline</u>

Plaintiff next argues the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for giving little weight to the opinion of examining physician, Dr. Kenderline. Dkt. 11, pp. 8-10.

Dr. Kenderline conducted a psychological/psychiatric evaluation of Plaintiff on January 24, 2014. AR 360-64. This evaluation included a clinical interview and mental status exam. AR 360-64. Dr. Kenderline opined Plaintiff was moderately limited in four areas of basic work activities: performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; making simple work-related decisions; maintaining appropriate behavior in the work setting; and setting realistic goals and planning appropriately. AR 362. Dr. Kenderline further opined Plaintiff had marked limitations in her ability to understand, remember, and persist in tasks by following detailed instructions, communicating and performing effectively in a work setting, and completing a normal work day

and work week without interruptions from psychologically based symptoms. AR 362. In addition, Dr. Kenderline opined Plaintiff was not within normal limits regarding her thought process and content, concentration, and insight and judgment. AR 363-64.

The ALJ summarized Dr. Kenderline's opinion and then stated:

> Dr. Kenderline's opinion is assigned little weight. (1) She was not a treating physician (2) and, in completing a check-the-box form, she did not provide a narrative with function-by-function limitations in support of the overall opinion. (3) She also did not review the claimant's medical records before making the above determination. (4) Thus, she apparently relied on the subjective report of symptoms and limitations provided by the claimant. Yet, as explained in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

AR 24-25 (numbering added).[1]

First, the ALJ first gave little weight to Dr. Kenderline's opinion because Dr. Kenderline "was not a treating physician." AR 25. In general, an ALJ may give more weight to a treating physician than a non-treating physician. *Andrews*, 53 F.3d at 1040-41. Here, however, the ALJ did not discount Dr. Kenderline's opinion in light of a treating physician's opinion, but rather discounted Dr. Kenderline simply because he was a non-treating physician. *See* AR 24. Accordingly, this was not a specific and legitimate reason for discounting Dr. Kenderline's opinion. *See Lester*, 81 F.3d at 830 (an ALJ must give specific and legitimate reasons, supported by substantial evidence, to reject an examining physician's opinion).

Second, the ALJ gave little weight to Dr. Kenderline's opinion because Dr. Kenderline completed a "check-the-box form" and "did not provide a narrative with function-by-function limitations." AR 25. An ALJ may reject a physician's opinion if it is a "check-off" report that does not "contain any explanation" for the bases of the physician's opinion. *Crane v. Shalala*, 76

---

[1] The ALJ also gave "little weight" to the global assessment of functioning ("GAF") score Dr. Kenderline assigned Plaintiff. AR 24. However, Plaintiff does not challenge this part of the ALJ's decision. *See* Dkt. 11, pp. 8-10. As such, the Court does not discuss the ALJ's treatment of Dr. Kenderline's GAF score.

F.3d 251, 253 (9th Cir.1996). Dr. Kenderline reported his findings on a standardized form from Washington State Department of Social & Health Services. AR 360-64. While this standardized form contained check-off boxes, the report further contained detailed notes of Dr. Kenderline's clinical interview and mental status exam. *See* AR 360-64. Thus, because Dr. Kenderline's report contained explanations for his opinion, this was not a specific, legitimate reason, supported by substantial evidence, to give Dr. Kenderline's opinion little weight.

Third, the ALJ discounted Dr. Kenderline's opinion because Dr. Kenderline did not review Plaintiff's medical records. AR 25. An ALJ may discount a physician's opinion if the physician did not review other medical records and instead relied entirely on Plaintiff's complaints and information submitted by Plaintiff's family and friends. *Bayliss*, 427 F.3d at 1217. In this case, although Dr. Kenderline did not review other medical records, Dr. Kenderline conducted his own clinical interview and mental status exam. AR 360-64. As such, he did not rely entirely on Plaintiff's complaints or information submitted by others. Because Dr. Kenderline conducted his own examination, the fact that Dr. Kenderline did not review other medical records was not a specific and legitimate reason, supported by substantial evidence, to give his opinion little weight.

Lastly, the ALJ gave little weight to Dr. Kenderline's opinion because she found the ALJ relied on Plaintiff's self-reports and there were "good reasons for questioning the reliability of the claimant's subjective complaints." AR 25. An ALJ may reject a physician's opinion if it is largely based "a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted). However, an ALJ cannot reject "an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate

opinion with his own observations." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (citing *Edlun v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)). Moreover, clinical interviews and mental status evaluations are "objective measures" which "cannot be discounted as a self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Here, the ALJ discounted Dr. Kenderline's opinion because she found they were based on Plaintiff's unreliable self-reports. AR 25. Yet no part of Dr. Kenderline's report questioned or discredited Plaintiff's reports. *See* AR 360-64. In addition, Dr. Kenderline conducted both a clinical interview and mental status evaluation. AR 360-64. As such, Dr. Kenderline's report cannot be discounted as self-report. *Buck*, 869 at 1049. Furthermore, as a psychiatric evaluation, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.* Therefore, the ALJ erred in discounting Dr. Kenderline's opinion for being based on Plaintiff's self-reports because this was not a specific, legitimate reason, supported by substantial evidence, under these circumstances.

For the above stated reasons, the Court concludes the ALJ erred because she failed to provide any specific and legitimate reason, supported by substantial evidence, to give Dr. Kenderline's opinion little weight. Had the ALJ properly considered Dr. Kenderline's opinion, the RFC and hypothetical questions posed to the vocational expert ("VE") may have included additional limitations. For example, the RFC and hypothetical questions may have included the limitations that Plaintiff would be limited in her ability to perform activities within a schedule, maintain regular attendance, be punctual, and communicate and perform effectively in a work setting. *See* AR 362-64. The RFC and hypothetical questions may have also included that Plaintiff would be limited in her ability to complete a normal work day and work week without

interruptions from psychologically based symptoms. AR 362. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

C. Dr. Washburn

Plaintiff further argues the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, to give little weight to the opinion of consultative examiner Dr. Washburn. Dkt. 11, pp. 11-13.

Dr. Washburn conducted a psychological examination of Plaintiff. AR 367-73. Dr. Washburn's examination included a review of four medical treatment reports, a review with Plaintiff of her personal history, a mental status exam, and psychological testing. AR 367-73. In conducting various tests on Plaintiff's memory, Dr. Washburn made many findings regarding Plaintiff's "poor" memory, including that Plaintiff's "low borderline scores [were] so marginal as to have little value in most work settings other than unskilled labor." AR 371. Dr. Washburn moreover opined Plaintiff had "poor ability to learn word associations," poor visual memory, and poor immediate memory. AR 371. Additionally, during the mental status exam, Dr. Washburn found Plaintiff appeared "emotionally detached," her thought processes "were hard to follow," and she had "limited" insight into her situation, with her overall adjustment containing "some histrionic features." AR 369-70.

After conducting his examination, Dr. Washburn opined Plaintiff does not "have the level of cognitive functioning and emotional stability needed to meet the requirements for full time, gainful employment at this time." AR 372. He also opined that Plaintiff's prognosis for returning to employment depended on both "improvement in her cognitive functioning and her developing more effective emotional coping skill through mental health counseling." AR 372.

1  The ALJ summarized Dr. Washburn's opinion and then assigned it "little weight"

2  because:

> [w]ith the exception of memory testing, Dr. Washburn (1) relied on the claimant's subjective allegations and social history, and admitted that his reasoning was speculative (Exhibit 9F/6). (2) Furthermore, his opinion is inconsistent with the claimant's work history and activities of daily living, including attending financial literacy classes, chairing AA meetings, and attending church activities. (3) Without substantial support from the other evidence of record, it is rendered less persuasive.

AR 25 (numbering added).

The ALJ first gave little weight to Dr. Washburn's opinion because Dr. Washburn relied on Plaintiff's self-reports and stated his reasoning was "speculative." AR 25. Nevertheless, as she did with Dr. Kenderline, the ALJ erred in discounting Dr. Washburn's opinion for relying on Plaintiff's self-reports. *See Ryan*, 528 F.3d at 1199-2000 (an ALJ cannot discredit a physician's opinion for relying on the plaintiff's self-reports when the physician himself did not discredit plaintiff's reports and makes his own observations); *see also Buck*, 869 F.3d at 1049 (psychiatric evaluations necessarily rely on self-reports, given "the nature of psychiatry"). Similarly, although Dr. Washburn stated his "formulation [was] somewhat speculative," his report was still backed by both a mental status exam and other psychological tests. *See* AR 367-72; *see also Buck*, 869 F.3d at 1049 (mental status exams are "objective measures"). Therefore, the ALJ's first reason for discounting Dr. Washburn's opinion was not a specific and legitimate reason, supported by substantial evidence, for doing so.

The ALJ's second and third reasons for giving Dr. Washburn's opinion little weight were error as well. Here, the ALJ discounted Dr. Washburn's opinion because she found it inconsistent with Plaintiff's work history and daily activities and unsupported by the record. AR 25. An ALJ may discount a doctor's findings if those findings appear inconsistent with a

plaintiff's daily activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Moreover, ALJ may discount a physician's opinion if it is inadequately supported "by the record as a whole." *See Batson*, 359 F.3d at 1195. Regardless, however, an ALJ cannot reject a physician's opinion without explaining her reasoning for rejecting that opinion. *Embrey*, 849 F.2d at 421-22. Hence, the ALJ's second and third reasons for discounting Dr. Washburn's opinion were error, as she failed to explain how Dr. Washburn's opinion was specifically inconsistent with Plaintiff's work history, daily activities, or other evidence in the record. *See* AR 25; *see also See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts she claims "point toward an adverse conclusion" and make no effort to relate these facts to "the specific medical opinions and findings she rejects"). These reasons for giving Dr. Washburn's opinion little weight were thus not specific and legitimate nor supported by substantial evidence. On remand, if the ALJ intends to discount Dr. Washburn's opinion, she must provide specific, non-conclusory reasons for doing so.

For the above stated reasons, the Court concludes the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to give little weight to Dr. Washburn's opinion. The ALJ therefore erred. Had the ALJ properly considered Dr. Washburn's opinion, the RFC and hypothetical questions posed to the VE may have contained the limitation that Plaintiff's memory had little value except in unskilled labor. AR 371. The RFC and hypothetical questions may have also included that Plaintiff does not have the cognitive function or emotional stability necessary for full-time, gainful employment. AR 372. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

**II. Whether the ALJ erred at Steps Three and Five of the sequential evaluation process.**

Lastly, Plaintiff asserts that in light of the ALJ's errors in the medical opinion evidence, the ALJ erred at Steps Three and Five of the sequential evaluation process. Dkt. 11, pp. 1, 14. The Court concluded the ALJ committed harmful error when she failed to properly consider the medical opinion evidence from Drs. Kenderline and Washburn. *See* Section I, *supra*. Accordingly, the ALJ must reassess Step Three, Plaintiff's RFC, and Step Five on remand. *See* SSR 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, she must also re-evaluate the findings at Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform in light of the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the VE defective when the ALJ did not properly consider two physicians' findings).

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 28th day of November, 2017.

David W. Christel
United States Magistrate Judge